

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-16-00267-CV

Rolando **HERNANDEZ**,
Appellant

v.

**AMISTAD READY MIX, INC.**,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 31393
Honorable Enrique Fernandez, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed:  February 8, 2017

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Rolando Hernandez appeals the trial court's take-nothing summary judgment in his negligence suit against Amistad Ready Mix, Inc. Hernandez argues he produced some evidence raising fact issues as to the statutory elements for a property owner's limited liability under chapter 95 of the Civil Practice & Remedies Code. He also argues he produced some evidence supporting his negligent-entrustment theory of liability. We affirm in part and reverse and remand in part.

### BACKGROUND[1]

Amistad hired Jesse Carrillo as a contractor to construct a truck port at Amistad's cement plant. Carrillo, in turn, hired Hernandez to help complete the project. Amistad and Carrillo agreed Amistad would pay Carrillo for labor and some welding materials, including screws, rods, and discs. Amistad agreed to provide Carrillo with equipment and steel materials, including posts and beams, for the structure. Amistad loaned Carrillo and Hernandez welding equipment, a scissor lift, and a forklift. Amistad's owner and president, Sergio Galindo, also provided Carrillo with steel posts and beams Amistad purchased years before and kept on its property. Some of these materials were rusted, corroded, and bent.

Amistad's specifications required most of the work to be performed at a height of at least twelve feet. Because the scissor lift would not get traction on the dirt ground in the construction area, Carrillo and Hernandez used Amistad's forklift to lift each other into the air. Carrillo discussed using the forklift in this manner with Galindo. Galindo allowed Carrillo and Hernandez to use Amistad's forklift in this manner and knew they had borrowed a pallet to stand on while being lifted. Galindo did not provide Carrillo or Hernandez with any fall protection equipment and had disposed of a "safety basket" attachment Amistad had previously used to lift workers using a forklift.

One morning, Carrillo used the forklift to lift Hernandez into the air to place cross-beams into position for the roof structure. While Hernandez was adjusting the beams, one of them "gave" and other beams started to slide. One of the beams hit Hernandez on his side and knocked him off the forklift. Hernandez fell and broke his ankle and knee.

---

[1] Although the facts in this case are disputed, the applicable standard of review requires we take all of Hernandez's evidence as true, view all of the evidence in a light most favorable to him, and resolve all conflicts in his favor. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

Hernandez sued Amistad for damages, alleging twenty different negligent acts and omissions, including negligently entrusting workers with "powered industrial equipment." Amistad filed a traditional and no-evidence motion for summary judgment, arguing chapter 95 of the Civil Practice & Remedies Code barred Hernandez's claim for damages and there was no evidence of negligent entrustment. The trial court granted Amistad's motion and rendered a take-nothing summary judgment in Amistad's favor.

## STANDARD OF REVIEW

"We review a summary judgment de novo." *City of San Antonio v. San Antonio Express-News*, 47 S.W.3d 556, 561 (Tex. App.—San Antonio 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "When a party moves for a no-evidence summary judgment, the nonmovant must produce some evidence raising a genuine issue of material fact." *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.) (citing TEX. R. CIV. P. 166a(i)). The nonmovant does not have the burden to marshal its evidence, but it must produce some evidence that raises a fact issue on the challenged element. *See id.* We take as true all evidence favorable to the nonmovant, resolve all conflicts in the evidence in the non-movants favor, and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc*, 997 S.W.2d at 223.

## CHAPTER 95

Chapter 95 of the Civil Practice & Remedies Code limits a property owner's liability for negligence that causes personal injury to an independent contractor or its employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.001-.004 (West 2011); *accord Abutahoun v. Dow Chem. Co.*, 463

S.W.3d 42, 43 (Tex. 2015).[2] For the property owner to be liable, chapter 95 requires that the property owner (1) "exercise[] or retain[] some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports"; and (2) have "actual knowledge of the danger or condition resulting in the personal injury . . . and fail[] to adequately warn." TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. In its motion for summary judgment, Amistad argued it did not exercise or retain any control over the work and lacked actual knowledge of the danger or condition resulting in Hernandez's injury. Because the trial court did not specify the basis for granting Amistad's motion for summary judgment, we must affirm if either ground is meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

**A. The "Some Control" Requirement**

Section 95.003's "some control" requirement "is a codification of the holding in *Redinger v. Living, Inc.*" *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing 689 S.W.2d 415, 418 (Tex. 1985)). In *Redinger*, the Supreme Court of Texas adopted the "retained control" standard enunciated in section 414 of the Restatement (Second) of Torts and referred to section 414's comments for guidance in applying the standard. 689 S.W.2d at 418. Comment a explains the "retained control" standard is satisfied if the defendant "retains control over the operative detail of doing any part of the work" or "retain[s] only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others." *See* RESTATEMENT (SECOND) OF TORTS § 414, cmt. a (1965).

---

[2] In his response to Amistad's motion for summary judgment, Hernandez did not challenge the applicability of chapter 95 and he does not do so on appeal.

The defendant "must have retained at least some degree of control over the manner in which the work is done," and "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* cmt. c. A defendant may retain control over the work even if the defendant is not present, supervising, or directing the work at the time of the injury. *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 782, 784 (Tex. 2001); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 469 (Tex. 1985) (per curiam). Furthermore, if the defendant retains some control over the operative detail of the work, the defendant is not excused from liability merely because others also retained some control over the work or some responsibility for workplace safety. *See Lee Lewis Const.*, 70 S.W.3d at 782, 784; *Tovar*, 692 S.W.2d at 469; *Redinger*, 689 S.W.2d at 418.

Under section 414 and *Redinger*'s holding, a defendant may retain some control through either a contractual right or the actual exercise of control. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803-04 (Tex. 1999). A defendant retains some control by expressly or tacitly approving an unsafe working condition the defendant has the authority to correct. *See Lee Lewis Const.*, 70 S.W.3d at 784; *Tovar*, 692 S.W.2d at 469. A defendant may also retain some control over the operative detail of the work by controlling access, storage, and use of construction materials and equipment. *See Pollard v. Mo. Pac. R.R. Co.*, 759 S.W.2d 670, 670 (Tex. 1988) (per curiam); *Pasadena Ref. Sys., Inc. v. McCraven*, Nos. 14-10-00837-CV & 14-10-00860-CV, 2012 WL 1693697, at *5 (Tex. App.—Houston [14th Dist.] May 15, 2012, pet. dism'd).

In his response to Amistad's motion for summary judgment, Hernandez produced his deposition testimony, as well as the deposition testimony of Carrillo and Galindo. According to Hernandez's deposition testimony, the operative detail of the work that led to his injury included (1) being lifted on Amistad's forklift without fall protection and (2) the use of Amistad's steel beams and posts that were in poor condition. Carrillo testified that under his agreement with

Amistad, Amistad was responsible for providing Carrillo and Hernandez with the equipment and materials to construct the truck port. He testified the contract price would have changed if he had been contractually responsible for acquiring and providing equipment and the necessary materials.

Carrillo further testified he requested and received Galindo's permission to use the scissor lift and the forklift that Amistad provided. According to Carrillo, he and Galindo "specifically discussed" using the forklift to lift himself and Hernandez on a pallet after the scissor lift would not gain traction in the construction area. Carrillo testified Galindo approved their using the forklift in this manner. Galindo testified he allowed Carrillo to use the forklift, but controlled whether Carrillo used other equipment, such as a front-end loader. Galindo permitted only Amistad employees to operate the front-end loader when assisting Carrillo and Hernandez. Galindo also testified Amistad provided Carrillo with the steel beams and posts for construction.

Taking Hernandez's evidence as true and resolving all conflicts in the evidence and indulging every reasonable inference in his favor, the evidence raises a fact issue that Amistad retained some control over (1) which materials Carrillo and Hernandez would use, and (2) whether Carrillo could use Amistad's forklift to lift Hernandez on a platform and without a safety basket attachment. We hold Hernandez produced some evidence raising a fact issue that section 95.003's "some control" element is satisfied. *See Lee Lewis Constr.*, 70 S.W.3d at 783-84 (holding defendant's approval of work without sufficient fall protection was some evidence of retained control); *Pasadena Ref. Sys., Inc.*, 2012 WL 1693697, at *5 (holding defendant retained control when allowing independent contractor to use a boom truck).

## B. The "Actual Knowledge" Requirement

To satisfy the "actual knowledge" requirement, the property owner must actually know of "the danger or condition resulting in the personal injury." TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(2). Actual knowledge of the danger or condition may be shown through circumstantial

evidence. *Ineos USA, LLC v. Elmgren*, — SW.3d —, No. 14-0507, 2016 WL 3382144, at *8 (Tex. June 17, 2016). The danger or condition may include a dangerous activity or premises condition. *Abutahoun*, 463 S.W.3d at 48. According to Hernandez's deposition testimony, which we must accept as true, he was injured because lifting him on a forklift without any fall protection was a dangerous activity and Amistad's materials were in a dangerous condition because they were rusted, corroded, and bent.

Carrillo testified the decision to use the forklift to lift workers was made by both Galindo and himself. Carrillo testified that after he was unable to use the scissor lift, he and Galindo "specifically discussed" using the forklift to raise workers up "while standing on a pallet." According to Carrillo, Galindo "knew that we used the pallet, because we borrowed it from there." Carrillo further testified, "[T]hat's what we came up with, or we agreed on, as far as getting up there . . . to use the pallet." He also stated Galindo did not offer him any fall protection for his use of the forklift.

Galindo testified he specified the truck port needed to be "at least 12 feet high" and he knew the project would require welding work to be performed at that height. He further testified:

Q       At that time, did you know it was unsafe for a worker to be lifted up on a pallet on the end of a forklift?
A       At that time, did I know it was unsafe?
Q       Yes.
A       I guess at any time, it's unsafe to lift somebody on a pallet.

Galindo also testified Amistad's only fall protection equipment included railings on catwalks and surrounding railings on solo ladders. According to Galindo, Amistad "used to have" a "safety platform or safety basket" to put on the front of its forklifts to lift workers, but Amistad disposed of it because "[i]t was banged up."

Galindo further testified Amistad's materials were from "[a]n old building" and they remained at Amistad's plant in piles five-feet to six-feet high. Galindo stated the materials "had

some rust." Carrillo testified Galindo showed him where the materials were and that they went together to "inspect the materials." According to Carrillo, some of the materials had to be "dug up out of the ground" and were laying in an open yard exposed to the elements, which Carrillo testified could compromise the integrity of the materials.

The evidence raises a fact issue that Amistad actually knew Carrillo and Hernandez were using the forklift to perform work at a height of twelve feet without any fall protection. The evidence also raises a fact issue that Amistad actually knew its materials were in a dangerous condition because the steel was rusted, corroded, and bent and the integrity of the materials had been compromised. We hold Hernandez produced some evidence raising a fact issue that section 95.003's "actual knowledge" element is satisfied. *See id.* We therefore reverse the trial court's summary judgment as to all of Hernandez's allegations of negligence except negligent entrustment, which we turn to now.

## NEGLIGENT ENTRUSTMENT

In its motion for summary judgment, Amistad argued there was no evidence of negligent entrustment. As alleged in his original petition and explained in his response to Amistad's motion, Hernandez's negligent entrustment theory of liability is based on Amistad entrusting Carrillo and Hernandez with a forklift because they were not competent or certified forklift operators. On appeal, Hernandez acknowledges it is undisputed Amistad had no knowledge of applicable safety regulations and safety standards regarding forklift operations. Hernandez also does not cite to any evidence that Amistad had actual knowledge that Carrillo and Hernandez were not competent or certified forklift operators.

Citing *4Front Engineered Solutions, Inc. v. Rosales*, Hernandez argues he must demonstrate only that a jury could find Amistad should have known Carrillo and Hernandez were not competent or certified forklift operators. — S.W.3d —, No. 13-13-00655-CV, 2015 WL

1182462 (Tex. App.—Corpus Christi Mar. 12, 2015) *rev'd*, — S.W.3d — (Tex. 2016). In addition to be reversed, *4Front Engineered Solutions* is distinguishable because the court of appeals held "chapter 95 does not apply to this case." *Id.* at \*13. Under chapter 95, a property owner must have "actual knowledge of the danger or condition resulting in the personal injury." TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(2); *see Dyall*, 152 S.W.3d at 710 (holding plaintiff "was required to surmount the defense provided by Chapter 95 as to all of his claims that sounded in negligence"). We hold the trial court did not err by granting summary judgment as to Hernandez's negligent-entrustment theory of liability.

## CONCLUSION

We affirm the trial court's summary judgment as to Hernandez's negligent-entrustment theory of liability. We reverse the remainder of the trial court's summary judgment and remand this case for further proceedings.

Luz Elena D. Chapa, Justice