# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00661-CV

---

**Jacinto Martinez, Appellant**

**v.**

**Baird/Williams Construction II, Ltd. d/b/a Baird/Williams Construction, Ltd.; and
Baird/Williams Construction, Inc., Appellees**

---

### FROM THE 169TH DISTRICT COURT OF BELL COUNTY
### NO. 324,127-C,
### THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING

---

### **M E M O R A N D U M   O P I N I O N**

While working on a school renovation project for his employer, subcontractor Amos Electric Supply, Jacinto Martinez fell from a portable stepladder and was seriously injured. Martinez brought a personal-injury suit against the general contractor of the project, Baird/Williams Construction II, Ltd. d/b/a Baird/Williams Construction, Ltd. (Baird/Williams), and its payroll arm, Baird/Williams Construction, Inc. (BWC, Inc.). Baird/Williams and BWC, Inc. moved for summary judgment, arguing that they owed no duty of care to Martinez because they neither retained contractual control nor exercised actual control over Martinez's work. The trial court granted their motions and dismissed Martinez's claims.

Because the contract between Amos Electric and Baird/Williams (the Subcontract) granted Baird/Williams the right to control whether Martinez used appropriate fall

protection while performing work on the stepladder, we hold that Baird/Williams owed Martinez a duty of care. But because BWC, Inc. was not a party to the Subcontract or otherwise involved in the operative details of the renovation project, we hold that BWC, Inc. owed Martinez no duty of care. Therefore, we will reverse the portion of the judgment granting summary judgment in favor of Baird/Williams and remand that portion to the trial court for further proceedings consistent with this opinion, but we will affirm the portion of the judgment granting summary judgment in favor of BWC, Inc.

## BACKGROUND

When Martinez fell from the portable stepladder, he was working on a school-renovation project at Ray Elementary School in Hutto, Texas. Martinez was employed as an electrician by Amos Electric. Amos Electric had been hired as a subcontractor by Baird/Williams to perform electrical work for renovation projects at multiple public schools. The work to be performed by Amos Electric and its employees was governed by the Subcontract.

Under the Subcontract and as relevant here, Amos Electric agreed to install a new electrical system at Ray Elementary School. The Subcontract provided that Amos Electric would "furnish and pay for all necessary labor, materials, [and] equipment," and perform "all of the work necessary or incidentally required for the completion of" the renovation project, consisting primarily of the "installation of a complete and operational electrical system" (the Work). The Subcontract further provided that the Work would "be done under the direction of and to the satisfaction of [Baird/Williams]."

Under the Subcontract, Amos Electric agreed to follow Baird/Williams's "Safety Procedures," including Baird/Williams's Fall Protection Policy. The Policy required "[a]ny

employee or subcontractor who works over six feet [to] have some type of fall protection, including but not limited to guardrails, safety nets[,] and personal fall arrest system." The Policy further required subcontractors "to provide their employees with the appropriate fall protection."

The Subcontract repeatedly emphasized that Amos Electric was solely responsible for the safety of its employees. The Subcontract provided that:

- Amos Electric was "assigned . . . full responsibility of complying with . . . all applicable health and safety standards . . . pertaining to its work, personnel, and equipment;"

- Amos Electric was "explicitly responsible for and assume[d] responsibility for all aspects of safety pertaining to its work;" and

- Amos Electric "ha[d] sole responsibility for providing a safe workplace in performing its Work and for its . . . employees" and was "solely responsible for ensuring that it complies with all applicable safety laws and regulations.

Despite the various provisions delegating safety matters to Amos Electric, if Amos Electric failed to take corrective action in response to a perceived safety violation, the Subcontract granted Baird/Williams the right to take corrective action itself and backcharge the cost to Amos Electric:

> If the Contractor believes the Subcontractor is not performing its Work in compliance with any applicable safety laws or regulations, Contractor reserves the right to stop Subcontractor's Work until corrective action is taken by Subcontractor. If Subcontractor fails to take corrective action, Contractor, in its discretion, shall have the right, but not the obligation, to take corrective action and to backcharge the cost or expense thereof against Subcontractor.

The Subcontract stipulated that any corrective action taken by Baird/Williams would not "waive or eliminate" Amos Electric's "sole responsibility of controlling the means and methods of its Work and the performance of its Work in a safe manner." But

3

Baird/Williams ultimately retained a right to take corrective action if Amos Electric was not performing work "in compliance with applicable safety laws and regulations."

When Martinez fell, he was replacing light fixtures in the cafeteria of Ray Elementary School. He was using a 12-foot portable stepladder without a safety harness or any other type of fall protection. It is undisputed that, at the time of his fall, Martinez was performing Work under the Subcontract and was in violation of Baird/Williams's Fall Protection Policy.

Martinez sued Baird/Williams and BWC, Inc. for negligence and gross negligence. Baird/Williams filed a traditional motion for summary judgment, and BWC, Inc. filed a no-evidence motion for summary judgment, both challenging the element of duty. The trial court granted the motions, and Martinez now appeals.[1]

## SUMMARY JUDGMENT FOR BAIRD/WILLIAMS

On appeal, Martinez argues that the trial court erred in granting summary judgment for Baird/Williams because the summary-judgment evidence raises a genuine issue of material fact as to whether Baird/Williams retained or exercised a right to control the methods, means, or details of his work and therefore owed him a duty to ensure he performed his work in a safe manner.

---

[1] After Baird/Williams and BWC, Inc. filed their summary-judgment motions, Martinez amended his petition adding a premises-liability claim. Thus, the trial court's initial orders granted only partial summary judgments. Baird/Williams and BWC, Inc. filed amended summary-judgment motions, but before their scheduled hearing, Martinez filed a stipulation abandoning his premises-liability claim. The trial court's final judgment recited that all claims and parties in the case had been disposed.

## A.  Standard of Review

We review the trial court's summary judgment de novo.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).  As the moving party, Baird/Williams had the burden to prove that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).

Baird/Williams sought summary judgment on the ground that it owed no duty of care to Martinez.  Therefore, we will affirm the trial court's judgment as to Baird/Williams if Baird/Williams met its burden to prove as matter of law that it owed Martinez no duty of care.  *See Fernandez*, 315 S.W.3d at 508 (defendant who conclusively negates element of plaintiff's claim is entitled to summary judgment).

## B.  Applicable Law

Under Texas law, a general contractor does not ordinarily owe a duty of care to its subcontractor's employee.  *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001).  However, a duty to see that the employee performs his work in a safe manner can arise if the general contractor has the right to control the subcontractor's work.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

For such a duty to arise, two conditions must be met.  First, the general contractor must have the right to control "the means, methods, or details" of the subcontractor's work.  *Id.*  Or, stated differently, the general contractor's right to control must extend to the "operative details" of the subcontractor's work.  *Id.* at 608.  A "general right of control over operations" is insufficient.  *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998) (per curiam).  Second, "the control must relate to the injury the negligence causes."  *Bright*, 89 S.W.3d at 606.

5

That is, the general contractor must have a "right of control over the injury-causing activity." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Thus, to satisfy these two conditions, the plaintiff must show that the general contractor had the right to control "the operative details" of "the injury-causing activity."

There are two ways to prove a right to control: by (1) a contractual right to control or (2) an exercise of actual control. *Bright*, 89 S.W.3d at 606. The distinction is important because determining the meaning of a contract is generally a question of law for the court, while determining whether someone exercised actual control is generally a question of fact for the jury. *Harrison*, 70 S.W.3d at 783.

## C. Analysis

Here, Martinez contends that Baird/Williams failed to establish as a matter of law that it owed him no duty of care because Baird/Williams both retained a contractual right to control and exercised actual control over his work. Because it is dispositive, we first consider whether Baird/Williams retained contractual control over Martinez's work. More specifically, we consider whether the Subcontract gave Baird/Williams the right to control the operative details of the way in which the injury-causing activity was performed, i.e., the way in which Martinez changed the light fixtures. We hold that it did for two principal reasons: (1) the Subcontract granted Baird/Williams the broad right to guide, order, and instruct Amos Electric and (2) the Subcontract granted Baird/Williams specific control over the manner and means by which Martinez used the stepladder.

6

***Under the Subcontract, Baird/Williams retained a broad right to guide, order, and instruct Amos Electric.***

Under the Subcontract, "all Work by [Amos] shall be done under the direction of and to the satisfaction of [Baird/Williams]." "Work" is defined as "all of the work necessary or incidentally required for the completion" of all work assigned to Amos Electric under the Subcontract, consisting primarily of the "installation of a complete and operational electrical system." It is undisputed that the work Martinez was performing when switching light fixtures in the Ray Elementary School cafeteria was part of the "Work" under the Subcontract. Therefore, when Martinez was injured, he was working "under the direction of" Baird/Williams per the Subcontract.

When a subcontract provides that the work performed by the subcontractor will be "under the direction of" the general contractor, the subcontract grants the general contractor the right to control the means, methods, and details of that work. *Brazos Contractors Dev., Inc. v. Jefferson*, 596 S.W.3d 291, 303–05 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 633 (Tex. 1976) (equating "under the direction" with "control" in operator/independent contractor relationship).

In *Brazos Contractors Development, Inc. v. Jefferson*, our sister court construed nearly identical contractual language. 596 S.W.3d at 303. There, the subcontract provided that the subcontractor's labor would be "under the direction of" the general contractor. *Id.* The court held that this language was unambiguous and meant that the general contractor "retained the right to guide, order, and instruct [the subcontractor] with respect to its work." *Id.* It explained that these rights "are analogous to those necessary to establish a contractual right of control" and,

therefore, further held the subcontract "granted to [the general contractor] the right to control the means, methods, or details of [the subcontractor]'s work." *Id.*

Our sister court reached this conclusion even though the subcontract there, like the subcontract here, "assigned to [the subcontractor] the responsibility of ensuring its employees' safety." *Id.* The provision delegating safety matters to the subcontractor did not negate the provision granting the general contractor the right to direct the subcontractor's work. *See id.*

### Under the Subcontract, Baird/Williams retained specific control over the manner and means by which Martinez used a stepladder.

Under the Subcontract, Amos Electric agreed to abide by Baird/Williams's Safety Procedures, including Baird/Williams's Fall Protection Policy, which required Amos Electric to provide its employees with appropriate fall protection. And if Baird/Williams believed that Amos Electric was not performing its Work in compliance with the Fall Protection Policy, Baird/Williams could stop Amos Electric's Work until Amos Electric took "corrective action," i.e., until Amos Electric provided its employees with appropriate fall protection and ensured that they used it. Moreover, if Amos Electric failed to do so, Baird/Williams could itself provide Amos Electric's employees with fall protection, make sure they used it, and backcharge the cost to Amos Electric.

When Martinez was using the stepladder to switch the light fixtures, Baird/Williams could have stopped the work and required Amos Electric to provide Martinez with appropriate fall protection. And if Amos Electric failed to do so, Baird/Williams could have itself provided Martinez with fall protection and backcharged the cost to Amos Electric.

8

Thus, Baird/Williams had the right to control the manner and means by which Martinez switched the light fixtures in the Ray Elementary School cafeteria.

In this way, the Subcontract is also analogous to the contract in *DeLeon v. Thos. S. Byrne, Ltd.*, No. 02-10-00438-CV, 2012 WL 42942 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op.). There, the contract granted the general contractor the power to provide labor, materials, and equipment to correct subcontractor work that the general contractor, in its sole discretion, deemed to be insufficient or defective. Even though the contract separately delegated control over all "construction means [and] methods," including those related to safety, to the subcontractor, *DeLeon* held the contractual right of the general contractor to correct insufficient subcontractor work gave the general contractor the "right and discretion to control the means, methods, and details of the [subcontractor's] work." 2012 WL 42942, at *5. The court held that the general contractor retained control over the subcontractor's work "as a matter of law." *Id.*

The Subcontract here gives Baird/Williams similar rights—in addition to the broad power to "direct[]" Amos Electric's employees' work. Therefore, we hold that the Subcontract granted Baird/Williams the right to control the operative details of the way in which Martinez performed his injury-causing activity and that, as a result, Baird/Williams failed to establish as a matter of law that it owed Martinez no duty of reasonable care. Accordingly, we sustain Martinez's point on this issue.[2]

---

[2] Having found as a matter of law that Baird/Williams retained contractual control precluding summary judgment, we need not address whether a fact issue exists showing that Baird/Williams exercised actual control over Amos Electric's work. *See* Tex. R. App. P. 47.1; *see also Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (explaining that if right of control over work details has contractual basis, fact that no actual control was exercised will not absolve general contractor of liability).

9

## SUMMARY JUDGMENT FOR BWC, INC.

Assuming Martinez is appealing the trial court's summary judgment in favor of BWC, Inc. and has adequately briefed the issue, we hold that there is no evidence that BWC, Inc. retained or exercised control over Martinez's work.

Baird/Williams and BWC, Inc. are separate entities. BWC, Inc. is the payroll arm of Baird/Williams. BWC, Inc. is not a party to the Subcontract; the signatories are Baird/Williams and Amos Electric. The Subcontract does not purport to grant BWC, Inc. any rights, much less the right to control Amos Electric's work. *See Bright*, 89 S.W.3d at 606 ("A party can prove right to control . . . by evidence of a contractual agreement that explicitly assigns the [general contractor] owner a right to control . . . ."); *Brazos Contractors Dev.*, 596 S.W.3d at 301 ("Control may . . . by evidence of a contractual agreement that explicitly assigns the ***general contractor*** a right to control . . . ." (emphasis added). Therefore, we hold there is no evidence that BWC, Inc. retained a contractual right to control Amos Electric's work.

Similarly, Martinez has failed to produce evidence that BWC, Inc. instructed him in his work or otherwise exercised actual control over him. *See Bright*, 89 S.W.3d at 606 ("A party can prove right to control . . . by evidence that the [general contractor] actually exercised control over the manner in which the [sub]contractor's work was performed."). Again, BWC, Inc. and Baird/Williams are separate entities, and there is no evidence that a representative or employee of BWC, Inc. was ever present or otherwise exercised control over the work being done at the school renovation project. Therefore, we hold there is no evidence that BWC, Inc. exercised actual control over Martinez.

Because there is no evidence BWC, Inc. retained or exercised control over Amos Electric's work, there is no evidence BWC, Inc. owed Martinez a duty of care. Accordingly, we overrule Martinez's point on this issue.

## CONCLUSION

We reverse the portion of the trial court's judgment granting summary judgment in favor of Baird/Williams on Martinez's claims for negligence, gross negligence, and respondeat superior and remand to the trial court for further proceedings consistent with this opinion. We affirm the portion of the trial court's judgment granting summary judgment in favor of BWC, Inc.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed in Part; Reversed and Remanded in Part

Filed:   October 31, 2025