

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-16-00088-CV

TIMOTHY LIPPOLDT
APPELLANT

V.

SALLIE M. QUILLIAN,
INDIVIDUALLY AND AS TRUSTEE
OF THE ROZELL QUILLIAN 2009
FAMILY TRUST
APPELLEE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. C2015069

----------

## MEMORANDUM OPINION[1]

----------

Appellant Timothy Lippoldt sued Appellee Sallie M. Quillian, individually and as trustee of the Rozell Quillian 2009 Family Trust (the Trust), for injuries he sustained while on property owned by her. The trial court granted summary

[1]*See* Tex. R. App. P. 47.4.

judgment for Quillian on all of Lippoldt's claims, and Lippoldt now appeals the summary judgment as to his premises liability claim.  In two issues, he argues that genuine issues of fact exist regarding (1) whether the level of control Quillian, as landlord, maintained over the portion of the premises on which he, an invitee, was injured gave rise to a duty owed to him and (2) whether she, as a landlord maintaining control over common areas, breached the duties of ordinary care she owed him as an invitee who was injured as a result of a condition of the common area.  Because we hold that the summary judgment is proper, we affirm the trial court's judgment.

**Background**

Lippoldt was injured when car jacks failed and allowed the sport utility vehicle (SUV or Hummer) they had supported to collapse on top of him.  The incident left Lippoldt partially paralyzed.  At the time of the incident, Lippoldt had been assisting Ryan Gibson and the SUV's owner in repairing the SUV.  The repairs were being made on property in Granbury, Texas, leased by Gibson from Quillian.  Quillian states that she is the owner of the property; she executed the lease as trustee in the space provided for the landlord's signature, under which appears the typewritten name of the Trust.  Lippoldt sued the owner of the SUV, Gibson, and Quillian, individually and as trustee of the Trust.  Only Lippoldt and Quillian are parties to this appeal.

Lippoldt alleged a premises liability claim against Quillian, asserting that an alleged condition on the premises—namely, Quillian's allowing Gibson "to store

2

and utilize inadequate and/or defective car repair equipment on [the] premises"—posed an inherent risk to him and others and was unreasonably dangerous. Lippoldt alleged that Quillian "breached the duty of ordinary care by neither adequately warning [him] of the condition nor making the condition reasonably safe" and by

> [f]ailing to supervise [the] tenants to ensure the safety of licensees;[2] . . . [a]llowing improper and/or defective equipment on the premises; . . . [f]ailing to warn [Lippoldt] and others of the dangerous condition; and . . . [f]ailing to remedy or make safe the dangerous condition.

Lippoldt also alleged that Quillian was negligent by failing to use "ordinary care in maintaining the premises in a safe condition by inspecting the property for any dangerous conditions and by making safe any latent defect or giving warning of any defect." He alleged that she had a legal duty to control or avoid increasing the danger from a condition at least partially created by her failure to supervise Gibson.

Lippoldt further claimed that this conduct constituted negligence per se, contending that Quillian had violated section 301.2 of the International Property Maintenance Code, which he later stated had been adopted by Hood County.

Lippoldt further alleged, as an "alternative to other counts," a negligent activity claim based on Gibson's storage and use of the car jack and Quillian's

---

[2]Lippoldt claimed invitee status in his response to Quillian's motion for summary judgment and also does so in his brief on appeal.

3

alleged control over the premises, authority to oversee the tenants' activities, and actual or constructive knowledge of the potential danger of Gibson's negligent activity.

Finally, Lippoldt asserted a claim of gross negligence against Quillian.

Quillian filed a combined no-evidence and traditional motion for summary judgment. She asserted that Gibson began storing car jacks on the property without her knowledge or consent and that, except for one room, she retained no control over the barn. She also asserted that she had no knowledge that Gibson, Lippoldt, and the SUV's owner performed automobile repairs on the property.

As no-evidence grounds, she asserted that there was no evidence that she or the Trust owed or breached any duty to support a premises liability, negligence, or negligence per se claim; owed any duty to support a negligent activity claim; or had any actual, subjective awareness of an extreme risk involved with any activities going on at the rented property to support a gross negligence claim.

As traditional grounds, Quillian asserted that the Trust was not the owner of the property; that control of the premises had been transferred to Gibson as the tenant and therefore neither she nor the Trust owed a duty to Lippoldt to support a premises liability or negligence claim; that section 301.2 of the International Property Maintenance Code, which Lippoldt relied on for his negligence per se claim, imposed no duty outside the common law standard of care; that neither she nor the Trust committed a negligent act; and that neither of

4

them had an actual, subjective awareness of any risk to support a gross negligence claim. As evidence, Quillian attached her own affidavit.

Quillian stated in her affidavit that she owned the property leased to Gibson. When she leased the property to him, she knew of no defects in or on any part of the leased property. She stated that she "transferred the entire portion of the land to the control of Ryan Gibson, except for a large barn located on the property." After the lease was signed, she and Gibson agreed that he would be allowed to store some items in the barn, but she "had [had] and still ha[d] no knowledge of what items he stored in the barn." She asserted that once he began storing items in the barn, she retained no control over it except for a room in the back in which her daughter stored some furniture. Quillian stated that she was not aware that Lippoldt had been invited to the property, and she did not consent to or instruct anyone to invite him there.

Along with his summary judgment response, Lippoldt objected to factual assertions made in Quillian's motion and objected to her statements that the written lease was modified orally as being in violation of the statute of frauds. He attached as evidence his own affidavit, the affidavit of Gibson, and a copy of the lease. The lease, which listed the Trust as the landlord, expressly did not include the barn. The lease described the leased premises by address and as "4.850 acres SUBD" in Hood County. The lease stated that the tenant "may use the Property as a private residence only" and that the "[t]enant may not permit any part of the Property to be used for . . . the repair of any vehicle."

5

In Lippoldt's affidavit, he stated that he was unaware that Gibson stored defective jacks in the barn and used them in automotive repair and that his lease prohibited him from repairing vehicles on the property; that Gibson told him that he usually dealt with Quillian's daughter regarding his lease; that at one time Quillian's daughter saw them repairing a truck; that items were stored in the barn that were not Gibson's; and that a third party was allowed by Quillian to store his tractor in the barn.

Gibson stated in his affidavit that most of his dealings regarding the lease were with Quillian's daughters, that Quillian's children periodically accessed the entire barn and kept property stored there, that a third party was allowed by Quillian to store his tractor there, and that Quillian's daughter saw Gibson and Lippoldt repairing a truck on the property.

The trial court granted summary judgment for Quillian without specifying the grounds. Lippoldt filed a motion for new trial that was denied by operation of law. He then filed this appeal challenging the summary judgment only as to his premises liability claim.

**Standard of Review**

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's

6

claim or defense.[3] The motion must specifically state the elements for which there is no evidence.[4] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[5]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[6] We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.[7] We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.[8] If the nonmovant brings forward

---

[3]Tex. R. Civ. P. 166a(i).

[4]*Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

[5]*See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

[6]*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[7]*Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

[8]*Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[9]

We review a traditional summary judgment de novo.[10] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[11] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[12] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[13]

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i).[14] If the appellant failed to produce more than a scintilla of evidence

---

[9]*Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

[10]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[11]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[12]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[13]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

[14]*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the rule 166a(c) burden.[15]

**Analysis**

In Lippoldt's first issue, he asserts that the evidence demonstrates a genuine issue of material fact regarding whether the level of control Quillian, as landlord, maintained over the portion of the premises on which he, an invitee, sustained serious physical injuries gave rise to a duty owed him by Quillian. In his second issue, Lippoldt argues that the evidence demonstrates a genuine issue of material fact regarding whether Quillian as landlord breached the duties of ordinary care owed him, an invitee who suffered serious physical injuries as a result of the condition of the common area of the leased property. In both issues, Lippoldt presupposes that he was injured by a condition of the property.

In her primary response, Quillian argues, as she did in her reply to Lippoldt's response to summary judgment and in the summary judgment hearing, that Gibson's use, condition, and storage of purportedly defective car jacks did not give rise to a premises liability claim against her because the jacks were not a condition of the premises. We agree.

When a person is injured on another's property, the injured person may have either a negligent activity claim or a premises liability claim against the

---

[15] *Id.*

9

property owner.[16]   They are independent theories of recovery.[17]   The Supreme

Court of Texas and this court have recognized that a claim based on "negligent

activity encompasses a malfeasance theory based on affirmative,

contemporaneous conduct by the owner that caused the injury, while [a]

premises liability [claim] encompasses a nonfeasance theory based on the

owner's failure to take measures to make the property safe."[18]   Whether a

specific case involves a negligent activity or a premises defect is an issue of

law.[19]

In *Williams*, the plaintiff fell and landed on his back on one of many drill

pipe thread protectors left lying on the ground, and the court concluded that the

---

[16]*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016); *see Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (op. on reh'g).

[17]*See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997); *Billmeier v. Bridal Shows, Inc.*, No. 2-08-314-CV, 2009 WL 1176441, at *4 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.) (mem. op.).

[18]*Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (footnotes omitted); *Calhoun v. F. Hall Mowing Co.*, No. 02-09-00459-CV, 2011 WL 167231, at *5 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.).

[19]*Lopez v. Homebuilding Co., Inc.*, No. 01-04-00095-CV, 2005 WL 1606544, at *2 (Tex. App.—Houston [1st Dist.] July 7, 2005, no pet.) (mem. op.) (relying on *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606–07 (Tex. 2002), *Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999) (op. on reh'g), and *Williams*, 952 S.W.2d at 527); *see also Sampson v. Univ. of Tex. at Austin*, No. 14-0745, 2016 WL 3212996, at *2 (Tex. June 10, 2016) ("Whether a claim is based on a premises defect is a legal question.").

case involved a premises defect, not a negligent activity.[20] In *Sampson*, the plaintiff tripped on an extension cord lying across a "pedestrian walkway."[21] The supreme court held that the claim was a premises defect claim and focused on the fact that the cord was not being put "into action or service *at the time* of the injury."[22] Instead, the static cord hanging over the concrete with a gap between the cord and the ground created a tripping hazard, a dangerous condition, on the campus.[23] On the other hand, when a dirt hauler moved dirt with his tractor while people were working in a construction area, and the tractor's box blade crushed a worker's finger, that injury was caused by a negligent activity, not a condition of the premises.[24]

Lippoldt did not fall on or trip over Gibson's jacks. Instead, according to his own amended petition, the jacks were being used when they gave way, and the SUV fell on him. Thus, we conclude as a matter of law that this is a negligent activity case, not a premises liability case.[25] On appeal, Lippoldt does not

---

[20] *Williams*, 952 S.W.2d at 526, 527.

[21] *Sampson*, 2016 WL 3212996, at *1.

[22] *Id.* at *5.

[23] *Id.*

[24] *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985).

[25] *See id.*; *Rodriguez v. Gulf Coast & Builders Supply, Inc.*, No. 14-05-00930-CV, 2006 WL 3797722, at *1, *4 (Tex. App.—Houston [14th Dist.] Dec. 28, 2006, no pet.) (mem. op.) (determining roommate who was underneath

challenge the summary judgment on his negligent activity claim or any other claim other than his premises liability claim. We therefore hold that the trial court correctly granted summary judgment for Quillian on the grounds that there was no evidence that she (or the Trust) owed or breached any duty to support a premises liability claim. Accordingly, we overrule Lippoldt's two issues.

**Conclusion**

Having overruled Lippoldt's two issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DELIVERED: December 22, 2016

---

independent contractor's truck on company lot replacing axle parts when jack collapsed and truck's chassis pinned him to ground, seriously injuring him, had a negligent activity claim, not a premises liability claim).