**VACATE and AFFIRM; and Opinion Filed August 24, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00955-CV

**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant**
**V.**
**BRIAN MILTON, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-11057**

# MEMORANDUM OPINION ON REHEARING

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Brown

We deny appellant's motion for rehearing. On the Court's own motion, we withdraw our opinion of February 14, 2018, and vacate the judgment of that date. This is now the opinion of the Court.

In this premises liability case, the Texas Department of Transportation (TxDOT) appeals a judgment on a jury verdict in favor of Brian Milton. In two issues, TxDOT contends the evidence is legally insufficient to prove it had actual knowledge of the dangerous condition and to prove it failed to adequately warn Milton. We affirm the trial court's judgment.

On September 21, 2012, Milton was injured in a single-vehicle accident on FM Road 148 in Kaufman, Texas. He sued TxDOT alleging there was an unreasonably dangerous condition on the roadway of which TxDOT knew and failed to adequately warn him. Milton testified at trial

that at about 6 a.m. on the day of the accident he was southbound on FM 148 on his motorcycle. It was dark, and the only light came from the motorcycle. He ended up in a ditch after his tires got tied up in a groove in the road. Milton had not been through the location on his motorcycle before, and although he passed a sign warning of rough road, he did not see it. The highway patrolman called to the scene of the accident testified the road had some "big cracks in it." The following color photograph of the road in question, taken by Milton's wife a few days after the accident, was admitted into evidence as Plaintiff's Exhibit 4:



Milton called several witnesses who were current or former TxDOT employees. Chris Johnson, former maintenance section supervisor in Kaufman County for TxDOT, testified that on August 21, 2012, one month before Milton's crash, he made a decision to have rough road signs put out on FM 148, one northbound and one southbound. Johnson gave a directive to his sign crew chief to put the signs in the general area of FM 148 between Murphy Lake and Warsaw. There were problems on this stretch of roadway during the summer due to the soil expanding or

heating. Johnson ordered the signs because of rough roads or roads that "were failing." As maintenance supervisor, Johnson tried to drive the roads on a regular basis. When asked what prompted him to order the signs, Johnson testified he believed he did so after driving the road. He testified he wanted to warn of the failure in the roadway depicted in Plaintiff's Exhibit 4.

A sign crew work order dated August 21, 2012, was admitted into evidence. It ordered installation of a rough road sign and a 45 MPH speed advisory sign to be placed on FM 148 "southbound between Murphy Lake & Warsaw." Plaintiff's Exhibit 6 was a map of the area. It indicated where the southbound warning sign was placed as well as the accident location. Milton's counsel asked Johnson if he would agree that the sign placed as shown on Exhibit 6 did not comply with his directive. Johnson answered, "Okay. I'm, I'm assuming, yeah."

Further, in April 2012, TxDOT contracted with Fireman Excavating, Inc. to repair potholes and "rework base" on various roadways in Kaufman County. At the time of Milton's accident, Fireman Excavating was doing repair work on FM 148.

Justin Teel, a TxDOT transportation specialist, was responsible for placing the rough road signs on FM 148. Milton's counsel asked Teel if he would agree that where he placed the southbound sign was not between the lake and the Warsaw community. Teel's response was, "No."

In 2012, Hal Stanford was TxDOT's area engineer for Kaufman County. On August 22, 2012, about one month before Milton's accident, Stanford had taken pictures of the area where Milton crashed. Stanford did not bring the pictures with him to trial. He took the pictures because the condition of the roadway was "less than perfect" and because he realized the road needed to be repaired. Between August 22 and September 21, no repairs were made to the area of the crash. They had a crew working toward that area but the crew did not get there by the date of the accident.

Also, Stanford pointed out on Plaintiff's Exhibit 6, the map, the area he considered to be between Murphy Lake and the Warsaw community. He was asked if the sign placement complied with the work order. In Stanford's opinion, the area "between Murphy Lake and Warsaw" was south of where the sign was placed. Stanford indicated that a warning sign placed too far away is ineffective.

Jeffrey Milburn, a professional engineer in traffic engineering and accident reconstruction, testified for TxDOT. He visited the scene of the accident after the road had been repaired and reviewed photographs and other documents. He testified that the distance between the warning sign and the site of the accident was 1.99 miles. After conducting his investigation, Milburn concluded that the warning sign placed in advance of the pavement condition adequately warned of the condition.

The jury was instructed that with respect to the condition of the highway, TxDOT was negligent only if: (a) the condition posed an unreasonable risk of harm; (b) TxDOT had actual knowledge of the unreasonable risk of harm; (c) Milton did not have actual knowledge of the danger; and (d) TxDOT failed to exercise ordinary care to protect Milton from danger by both failing to adequately warn him of the condition and by failing to make that condition reasonably safe. The jury found that TxDOT's negligence proximately caused the occurrence in question and that Milton's negligence, if any, did not proximately cause the occurrence. The jury determined that Milton's damages were $1,200,000. The trial court rendered judgment for Milton, capping his damages at $250,000 in accordance with the tort claims act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(a) (West 2011).

Under the tort claims act, when a claim arises from a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises. *Id.* § 101.022(a) (West 2011). The duty owed

to a licensee requires that a landowner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016). Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of a duty owed to him: (1) the condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's failure was a proximate cause of injury to the licensee. *Id.* To prove actual knowledge, a licensee must show that the owner actually knew of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition could develop over time. *Id.* at 392. Actual knowledge of the danger or condition may be shown through circumstantial evidence. *Hernandez v. Amistad Ready Mix, Inc.*, 513 S.W.3d 773, 777 (Tex. App.—San Antonio 2017, no pet.).

TxDOT contends the evidence is legally insufficient to establish both its actual knowledge of the dangerous condition and that it failed to exercise ordinary care by failing to adequately warn Milton of the danger. When an appellant challenges the legal sufficiency of the evidence on an issue for which it did not have the burden of proof, it must demonstrate on appeal that there is no evidence to support the adverse findings. *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied). We consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *Id.* We are mindful that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.* A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the judgment. *Id.*

In its first issue, TxDOT contends the evidence is legally insufficient to support a finding that it had actual knowledge of an unreasonably dangerous condition. TxDOT does not dispute that the condition of the road was unreasonably dangerous; it has not challenged the sufficiency of the evidence that the roadway posed an unreasonable risk of harm. TxDOT acknowledges that it had actual knowledge of the condition of the roadway. Clearly, the testimony of Johnson, who ordered placement of signs to warn of the condition a month prior to the accident, and Stanford, who took pictures of the area of the crash because he realized it needed repair, is more than a scintilla of evidence to establish TxDOT's actual knowledge of the condition. TxDOT's argument is that there is no evidence it had actual knowledge the condition of the roadway was unreasonably dangerous. It points out that none of Milton's witnesses from TxDOT testified they knew the condition of the road was unreasonably dangerous. But the jury had before it a color picture of FM 148 at the accident location from which it determined the condition of the road posed an unreasonable risk of harm. Further, TxDOT employee Stanford had taken his own pictures of the location a month before the accident, but TxDOT did not present them as evidence. The jury could infer that those pictures would not have helped TxDOT. *See Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex. App.—Fort Worth 1993, writ denied). Although there was not express testimony TxDOT knew the condition of the road was unreasonably dangerous, the jury could have reasonably determined that TxDOT's actual knowledge of the specific condition was actual knowledge the condition posed an unreasonable risk of harm, especially in light of TxDOT's decision to warn of the condition. *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993).

In support of its contention that it did not have actual knowledge, TxDOT also cites the lack of any evidence of prior accidents at the site, despite the fact that a minimum of 2,500 vehicles traveled the road each day. Lack of notice of similar accidents does not conclusively negate actual knowledge. *City of Irving v. Seppy*, 301 S.W.3d 435, 444 (Tex. App.—Dallas 2009, no pet.).

There is more than a scintilla of evidence that TxDOT had actual knowledge of the unreasonably dangerous condition. We overrule TxDOT's first issue.

In its second issue, TxDOT contends the evidence is legally insufficient to show it failed to adequately warn of the road condition. TxDOT maintains the only evidence as to the adequacy of its warnings came from its expert Milburn. He testified the sign TxDOT placed two miles in advance of the condition was an appropriate and adequate warning about the condition.

But Milton presented evidence from which the jury could have reached the opposite conclusion. There was evidence the warning sign was not placed in between Murphy Lake and Warsaw as directed in the work order and was instead placed farther away from the road condition than ordered.[1] Further, the warning sign was two miles ahead of the condition, and there were two right-angle turns in the road between the sign and the dangerous condition. It was within the province of the jury to disbelieve TxDOT's expert testimony that the sign was adequate to warn of the road condition and instead determine it was inadequate. *See Diamond Offshore Mgmt. Co. v. Guidry*, 171 S.W.3d 840, 843 (Tex. 2005) (jury free to disbelieve plaintiff's expert). There is more than a scintilla of evidence that TxDOT failed to adequately warn of the dangerous condition. We overrule TxDOT's second issue.

In its motion for rehearing, TxDOT contends it has sovereign immunity for its decisions regarding placement of the warning signs and asks us to dismiss Milton's case for want of jurisdiction. Although TxDOT did not seek this relief in its opening brief, sovereign immunity implicates subject-matter jurisdiction and may be raised at any time in a proceeding. *See Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 751 (Tex. 2017). We review a challenge

---

[1] TxDOT disputes that there is evidence the southbound sign was misplaced. For example, it asserts that Teel's "no" answer when asked whether he agreed he did not place the sign between Murphy Lake and Warsaw means he disagreed. Teel's response however could have been interpreted to mean, "No, the sign was not between the lake and Warsaw." It was up to the jury to resolve this ambiguity. And Johnson's testimony on this topic was clearer. Further, TxDOT does not mention Stanford's testimony indicating the warning sign was placed north of where it was ordered to be placed. When asked if placement of the warning sign complied with the work order, Stanford answered, "Between Murphy Lake and Warsaw, in my opinion, would be south of that, of where the road crosses the lake."

to the trial court's subject-matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A party suing a governmental entity must establish the State's consent to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The State's sovereign immunity from suit for tort claims is waived to the extent the tort claims act creates liability. TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (West 2011). The State is immune from suits arising from its discretionary acts and omissions. *Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (West 2011). This includes discretionary sign-placement decisions. *State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 326 (Tex. 2002); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(a) (West 2011). When the governmental unit in the exercise of its discretion decides to act, however, a distinction is drawn between the negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of that policy, for which immunity is waived. *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007); *see City of Dallas v. Hillis*, 308 S.W.3d 526, 535 (Tex. App.—Dallas 2010, pet. denied).

As discussed above, there was evidence the southbound warning sign was not placed in the location specified in TxDOT's work order and was instead placed farther away from the road condition than ordered. Thus, there was some evidence TxDOT negligently implemented its discretionary decision about where to place the warning signs. As such, TxDOT cannot conclusively establish its sovereign immunity in this case. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (plea to jurisdiction must be granted if defendant presents undisputed evidence that negates existence of jurisdiction).

We affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


160955F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEXAS DEPARTMENT OF
TRANSPORTATION, Appellant

No. 05-16-00955-CV        V.

BRIAN MILTON, Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-11057.
Opinion delivered by Justice Brown,
Justices Lang and Whitehill participating.

In accordance with this Court's opinion of this date, we **VACATE** our February 14, 2018 judgment. This is now the judgment of the Court.

The trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee BRIAN MILTON recover his costs of this appeal from appellant TEXAS DEPARTMENT OF TRANSPORTATION.

Judgment entered this 24th day of August, 2018.